No. 12846

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

_____

THE STATE OF MONTANA,

                Plaintiff and Appellant,

  -vs-

CLANCY CUNNINGHAM,

                Defendant and Respondent.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
             Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        Richard Dzivi argued, Special Assistant Attorney
         General, Great Falls, Montana
        Harold F. Hanser, County Attorney, Billings, Montana

    For Respondent:

        Moses, Kampfe, Tolliver and Wright, Billings, Montana
        Ralph Wright argued, Billings, Montana

_____

                    Submitted:  April 14, 1975

                    Decided:  MAY -2 1975

Filed: MAY 2 1975

*Thomas J. Kearney*
                          Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The question in this case is whether further prosecution is barred by the double jeopardy provisions of the United States and Montana Constitutions. The district court held it was. We reverse.

On August 24, 1973, defendant Clancy Cunningham was charged with first degree assault arising out of the alleged stabbing of one Larry Catlin. Defendant entered a plea of "not guilty". The case was set for trial on March 21, 1974, in the district court of Yellowstone County.

On the trial date, a jury was duly selected and sworn. The district judge then read a general omnibus jury instruction without objection. Court was then recessed over the noon hour.

When court reconvened, the deputy county attorney moved to dismiss the action on the ground that a new and different charge, specifically third degree assault, was being filed against the defendant in justice court. The substantial reason for the dismissal was that the victim of the alleged assault was not available to testify. The victim, a resident of Wyoming, had not been subpoenaed. The state's motion to dismiss was granted without objection.

Defendant entered a plea of "guilty" to the third degree assault charge based on the same incident. He was sentenced in the justice court to six months in the county jail.

Thereafter on May 17, 1974, defendant, represented by different counsel, withdrew his prior plea of "guilty" and entered a plea of "not guilty" to the third degree assault charge in the justice court. Thereupon the state dismissed the third degree assault charge and filed a first degree assault charge based on the same incident in the district court.

Defendant moved to quash the latter charge on the ground that it placed defendant in jeopardy a second time on the same charge in violation of the double jeopardy provisions of the federal and state constitutions. Affidavits were filed by the deputy county attorney, a paralegal officer of the county attorney's staff, and the victim. These affidavits are somewhat at variance concerning what prior arrangements had been made for the victim to testify and why he did not appear to testify on March 21 on the former charge of first degree assault against defendant.

After hearing, the district court granted defendant's motion to quash. The state appeals.

The Fifth Amendment's prohibition against placing a person twice in jeopardy for the same offense applies to state court criminal proceedings through the "due process" clause of the Fourteenth Amendment. Benton v. Maryland (1969) 395 U.S. 784, 89 S.Ct. 2056, 23 L ed 2d 707. This proscription is not only against being twice punished, but also against being twice put in jeopardy. United States v. Ball (1896) 163 U.S. 662, 16 S.Ct. 1192, 41 L.ed. 300; United States v. Jorn (1971) 400 U.S. 470, 91 S.Ct. 547, 27 L ed 2d 543. It thus becomes necessary to determine when jeopardy attaches in a Montana state court criminal prosecution.

Montana statutes provide that jeopardy attaches in a criminal trial after the first witness is sworn. The 1969 Montana legislature so provided in Ch. 228, Session Laws of 1969, codified as section 94-6808.3, R.C.M. 1947. This Montana statute was derived from the Model Penal Code. § 1.08, Model Penal Code, Proposed Official Draft, 1962. The American Law Institute, in formulating this portion of the Model Penal Code, determined that jeopardy customarily attaches in nonjury cases upon swearing the first witness (see Anno. 49 ALR3d 1039); and concluded that no valid

- 3 -

rationale exists for jeopardy attaching at a different time in a jury trial. The Montana legislature in 1969 adopted this standard of when jeopardy attaches.

The 1973 Montana legislature, meeting after adoption of the 1972 Montana Constitution, again considered this state's criminal statutes on former prosecutions and double jeopardy. This legislature reenacted section 94-6808.3, R.C.M. 1947, providing that jeopardy attaches in a criminal trial after the first witness is sworn. Section 95-1711, R.C.M. 1947.

The federal rule, unlike the Montana statute, provides that in criminal trials in the federal courts jeopardy attaches when the jury is selected and sworn. Downum v. United States, (1963) 372 U.S. 734, 83 S.Ct. 1033, 10 L ed 2d 100. Whether the source of this rule lies in the rule making power of the United States Supreme Court over federal court proceedings or constitutes a pronouncement of double jeopardy standards of the United States Constitution is unclear.

Thus the constitutionality of the Montana statute providing that jeopardy attaches when the first witness is sworn is squarely presented.

Defendant contends the Montana statute is unconstitutional because it violates the double jeopardy standards of the United States Constitution as enunciated in a series of United States Supreme Court decisions, principally Downum v. United States (1963), supra; Duncan v. Louisiana (1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L ed 2d 1412; Illinois v. Somerville (1973), 410 U.S. 458, 93 S.Ct. 1066, 35 L ed 2d 425, 433, 434, and Serfass v. United States (1975) ____ U.S. ____, 43 L ed 2d 265, 95 S.Ct.____ . Although there is language in these opinions that supports this conclusion, the facts and issues in these cases do not in our opinion set up a rigid, immutable constitutional rule to be applied mechanically in determining

- 4 -

whether state laws conform.  Although constitutional opinions

of the United States Supreme Court are necessarily painted

with a broad brush, the language cannot be interpreted in a

factual vacuum.  As the United States Supreme Court observed in

Somerville in commenting on its holding in a prior case:

> "While it is possible to excise various portions
> of the plurality opinion to support the result
> reached below, divorcing the language from the
> facts of the case serves only to distort its
> holdings."

Each of the cases noted in the preceding paragraph on

which the defendant relies is clearly distinguishable from the

instant case and does not present the issue with which we are

here confronted.  Downum involved a trial in federal court where

jeopardy had clearly attached under the federal rule.  Duncan

involved the right to trial by jury, not double jeopardy.  Somer-

ville involved a state criminal trial where jeopardy had clearly

attached under a state statute providing that jeopardy attached

when the former prosecution was "terminated improperly after the

jury was impaneled and sworn", the federal rule.  (For the text

of the statute see People v. Somerville, 88 Ill.App.2d 212, 232

N.E.2d 115).  Serfass involves a prosecution in federal court

where the indictment was dismissed by pretrial order and defend-

ant had not yet been put to trial before the trier of the facts.

Our inquiry here focuses on whether the federal rule is

of constitutional dimensions precluding state legislation on the

subject.  Or stated another way, is the federal rule so fundamen-

tal to the American system of justice that the "due process"

clause of the Fourteenth Amendment mandates its application to

state court criminal proceedings?

We perceive no inherent merit in the federal rule over

Montana's state law.  It has been said the federal rule is de-

signed to prevent prosecutorial manipulation.  Illinois v. Somerville,

- 5 -

supra. It has further been said that the federal rule guarantees the defendant his valued right to have his trial completed before the tribunal and jury selected for his case. Wade v. Hunter, (1949) 336 U.S. 684, 93 L.Ed 975; United States v. Jorn, supra.

We fail to see in what manner the federal rule protects against these abuses to a greater extent than Montana law. Prosecutorial manipulation can be effected as readily under one rule as under the other. If bent on manipulation, a federal prosecutor can move to dismiss after the jury is selected but before it is sworn, as readily as a state prosecutor can move to dismiss after the jury is sworn but before the first witness is called. In either case, the real protection against prosecutorial manipulation is the discretion of the trial judge in granting or denying dismissal. Here, for example, the judge could have, but did not, dismiss with prejudice.

Nor do we see any greater protection in the federal rule as far as securing to defendant the right to have his trial completed before the court and jury selected to try his case. Montana adheres to this principle also. It all depends on when the trial is considered to have commenced--whether on selection and swearing of the jury as in the federal courts, or on swearing the first witness as in Montana state courts.

We find no substantial difference between the two rules. Montana policy as enunciated by its legislature is that the trial does not start until the first witness is sworn. Sound policy reasons exist for this rule, principally that the jury as the trier of the facts has nothing to consider until the first witness is called and sworn. This appears entirely consistent with the constitutional standard that jeopardy does not attach until the defendant has been put to trial before the trier of the facts.

Serfass v. United States (1975), supra. And as the United

States Supreme Court observed in <u>Somerville</u>:

> "Federal courts should not be quick to conclude
> that simply because a state procedure does not
> conform to the corresponding federal statute or
> rule, it does not serve a legitimate state policy."

For these reasons, we conclude that the Montana statute

does not violate United States constitutional standards of double

jeopardy. Neither does the statute violate the double jeopardy

provision of the 1972 Montana Constitution, Art. II, Section 25.

This provision does not define when jeopardy attaches leaving the

legislature free to make that determination. The legislature has

done so by enactment of the statutes heretofore noted. In so

doing it has nullified any suggestion found in the language of

State v. Gaimos (1916) 53 Mont. 118, 162 P. 596, that jeopardy

attaches upon impaneling and swearing the jury.

This cause is remanded to the district court of Yellow-

stone County for further proceedings.

_____
                              Justice

We concur:

_____
    Chief Justice

_____

_____
  Justices